UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-12 (DSD/JMM)

Dean Hermann Peter,
on behalf of himself and
all other similarly situated

Plaintiff,

v. **ORDER**

Village Imports Company,
a Minnesota corporation,

Defendants.

Eric L. Crandall, Esq., Crandall Law Office, 275 South 3rd Street, Suite 101, Stillwater, MN 55082, counsel for plaintiff.

Gregory J. Johnson, Esq. and Johnson & van Vliet, 975 First Bank Building, 332 Minnesota Street, St. Paul, MN 55101, counsel for defendants.

This matter is before the court on defendant's motion for summary judgment and plaintiff's motion for partial summary judgment. Based on a review of the file, record, and proceedings herein, the court denies plaintiff's motion and grants defendant's motion.

**BACKGROUND**

On March 29, 2000, David Hermann Peter ("Peter") visited Wayzata Mitsubishi and expressed an interest in purchasing a 2000 Mitsubishi Eclipse GT automobile. (Belisle Aff. ¶3; see also

FILED 10-9-01
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. 10-9-01
Deputy Clerk's Initials ____

Johnson Aff. ¶3). Peter wanted to trade in his 1998 Ford Explorer to purchase an Eclipse. (Belisle Aff. ¶3). Peter agreed to purchase an Eclipse for $23,452 and agreed to accept a trade-in allowance of $16,252 on his Explorer. (Id.) As a result, the total taxable sale was $7,200. (Id.) The total amount due on delivery, adding together the total taxable sale ($7,200), applicable sales tax ($648), fees ($323), and the outstanding lien on Peter's Explorer ($11,700) was $19, 691. (Id.) Peter executed a purchase contract setting forth the terms of the purchase.[1]

After Peter executed the purchase contract and filled out a credit application, he met with the finance manager in Wayzata Mitsubishi's business department. (Id. ¶ 4). Peter agreed to make a purchase down payment of $7,991 to reduce the amount financed from $19,691 to $11,700. (Id.) Wayzata Mitsubishi arranged financing for the purchase. (Id.) The purchase contract stated: "If DEALER is arranging credit for YOU, this CONTRACT is not valid until a credit disclosure is made as described in Regulation Z and you have accepted the credit extended." (Johnson Aff. Ex. 1).

After the parties discussed financing, Peter was presented with an installment contract for his review. (Belisle Aff. ¶ 4).

---

[1] Peter's memorandum in opposition to defendant's motion for summary judgment mentions that only he signed the purchase contract. While no one at the dealership signed the agreement when Peter bought the Eclipse, there is no dispute that Village Imports performed its part of the bargain and that Peter left the dealership with the Eclipse.

Financing was arranged through Mitsubishi Motors Credit of America ("MMCA") over a 36-month period at 0.00 percent annual percentage rate ("APR") with no payments for the first 90 days. (Johnson Aff. Ex. 2). The installment contract that was presented to Peter contained a segregated truth-in-lending disclosure box entitled, "**DISCLOSURES PURSUANT TO TRUTH IN LENDING ACT,**" which also identified in bold, the "**ANNUAL PERCENTAGE RATE**" (0.00%), "**AMOUNT FINANCED**" ($11,700.00), "**FINANCE CHARGE**" ($0.00) "**TOTAL OF PAYMENTS**" ($11,700.00) and the "**TOTAL SALE PRICE**" of $24,243.00. (Id.)

Peter reviewed the installment contract, including the Truth in Lending Act (TILA) disclosures, and signed the contract. (Belisle Aff. ¶ 4.) Immediately above Peter's signature is a provision stating, in bold "**NOTICE TO THE BUYER: 1. Do Not Sign This Contract Before You Read It OR If It Contains Any Blank Spaces. 2. You Are Entitled To An Exact Copy Of The Contract Before You Sign.**" (Johnson Aff. Ex. B). After signing, Peter handed the installment contract back to the Finance Manager. (Belisle Aff. ¶ 4). The Finance Manager then tore off the carbon copy marked "Borrower" on the bottom and gave Peter that copy.[2]

---

[2] In response to Wayzata Mitsubishi's request of admission, Peter acknowledged that he reviewed all of the terms of the installment contract, including the TILA disclosures, before he executed the contract and that he received a copy of the installment contract. (Johnson Aff. Ex. A).

(Id.) Peter then took delivery of the vehicle (Belisle Aff. ¶ 4).

Peter filed this action against Village Imports alleging that Village Imports had engaged in unlawful practices in connection with the sale and finance of the motor vehicle, specifically, by failing to provide Peter with a copy of the retail installment contract prior to the time of execution. Village Imports now brings this motion for summary judgment, and Peter brings a motion for partial summary judgment. For the reason stated, defendant's motion is granted and plaintiff's motion is denied.

**DISCUSSION**

To prevail on a motion for summary judgment, the moving party must demonstrate to the court that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). For purposes of summary judgment, a fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for the nonmoving party. Id. No genuine issue of material fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. However, if a plaintiff cannot support each element of its claim, summary judgment must be granted, because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23. With this standard at hand, the court considers the parties' cross motions for summary judgment.

**A. No TILA Violation Has Occurred.**

Peter argues that the court should enter partial summary judgment against Village Imports for violation of TILA based on Village Imports' failure to provide Peter with a "timely" copy of the finance agreement prior to the time of execution. Village Imports argues that it did provide a copy of the finance agreement in accordance with TILA.

TILA, 15 U.S.C. § 1601 *et seq.* (1994), as implemented by Regulation Z, 12 C.F.R. pt. 226 (2000), was enacted by Congress as a tool "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him ... and to protect the consumer against inaccurate and unfair credit billing ... practices."[3] 15

[3] In his memorandum of law in support of his motion for partial summary judgment Peter raises an allegation that the terms of the contract are not those that were orally negotiated by the parties. Since this claim was never pleaded in the underlying (continued...)

U.S.C. § 1601(a); see also First Nat'l Bank v. Office of the Comptroller, 956 F.2d 1456, 1461 (8th Cir. 1992). To meet this end, TILA mandates that creditors make specific disclosures when extending credit to consumers. See 15 U.S.C. § 1638(a). These disclosures include the identity of the creditor, the amount financed, the finance charge and the total number of payments. Id. TILA also requires that before consummation of the deal, consumers be given a copy of the credit term that they can keep to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available." 15 U.S.C. § 1601(a). Because TILA is to be broadly construed to provide protection for the consumer, any failure to disclose information as required by TILA or Regulation Z results in a technical violation. Riggs v. Gov't Emp. Financial Corp., 623 F.2d 68 (9th Cir. 1980).

Village Imports is a creditor as defined by 15 U.S.C. § 1602(f). Peter is a consumer as defined by 15 U.S.C. § 1602(h). The deal that took place on March 29, 2000, between Peter and

---

[3](...continued)
complaint the court will not address it. The court further notes that TILA is concerned with disclosures concerning the cost of credit. Peter's challenge to the bargain reached by the parties does not fall under the purview of TILA. TILA "is not intended as a vehicle for pursuing contract actions" whereby the purchaser can challenge the terms of the bargain. Paull v. Chrysler Credit Corp., 544 F. Supp. 848, 851 (N.D. Ill. 1982), aff'd 705 F.2d 944. Thus, Peter's claim concerning the oral agreements will not be considered by the court in determining the propriety of summary judgment.

Village Imports was a credit sale under 15 U.S.C. § 1602 (g). See also 12 C.F.R. § 226.2(a)(16) (defining "credit sale" as "a sale in which the seller is a creditor").

Peter argues that the disclosure of the credit terms contemporaneous with his obligation to sign the sales contract failed to provide him with an opportunity to "shop" for a better interest rate.[4] While the Eighth Circuit has never directly addressed this issue, the court believes that giving a buyer the credit terms on a form that he is to sign complies with the timing requirements of TILA. The retail installment contract given to Peter contained all of the credit and financing terms of the transaction. Peter was given the opportunity to read the contract before he signed it. Peter did not become obligated on the credit transaction until he signed the contract. If Peter did not like the terms, he could have chosen not to sign at the time and taken the agreement with him to "shop" for a better rate. Peter made the choice to sign immediately and did not shop around. Village Imports cannot be held liable for Peter's decision.

Peter cites Polk v. Crown Auto, Inc. for the proposition that providing a buyer a retail installment contract itself for the buyer to sign does not satisfy the mandate and policy of TILA. 221

---

[4] The court finds this argument peculiar since Peter obtained an interest-free loan from Village Imports through MMCA. It is difficult to conclude that there may be a creditor willing to give a lower rate of interest than 0.00 percent.

F.3d 691 (4th Cir. 2000). The court disagrees. The principal holding in Polk is that an auto dealership cannot give a buyer a copy of his credit terms after the consummation of a transaction. Id. The dealer must provide a detailed disclosure of the credit terms in writing before consummation of the transaction. Id. at 692. Furthermore, Polk is distinguishable because in that case the dealer explained the credit terms orally, had the buyer sign forms and then gave the buyer the full written disclosures in a form that he could keep. Id. at 691. Here, Peter was given an unsigned copy of the retail installment contract (which contained the TILA disclosures), he reviewed it and then signed it. The court finds that Village Imports satisfied TILA when it gave Peter the unsigned contract containing the TILA disclosures and Peter had the opportunity to defer signing it if he found the terms unacceptable.

**B. No Actual or Statutory Damages**

Even if the court adopted Peter's overly broad interpretation of TILA, Village Imports would still be entitled to summary judgment since Peter cannot demonstrate either statutory or actual damages. Statutory damages are only available for violations of 15 U.S.C. § 1638(a)(2), (3), (4), (5), (6) and (9). Otherwise, an individual is limited to suing for actual damages. 15 U.S.C. § 1640(a)(4). Village Imports's alleged failure to provide timely disclosures is a purported violation of 15 U.S.C. 1638(b) for which *only* actual damages are available. Id. And Peter cannot assert

any actual damages here since he received an interest rate of 0.00 percent. In other words, the court does not believe that Peter can reasonably contend that he suffered any actual damages on the basis of his alleged inability to shop around for a better rate since the one he received in the retail installment contract he signed with Village Imports was 0.00 percent. In sum, even if TILA were applicable, Peter would not be entitled to recover any statutory or actual damages.

**CONCLUSION**

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for summary judgment is granted;

2. Plaintiff's motion for partial summary judgment is denied; and

3. Plaintiff's complaint is dismissed with prejudice

**LET THE JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 9, 2001

David S. Doty, Judge
United States District Court

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

**Please forward this announcement to the recipient of this fax.**

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500